# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 14 2020, 7:22 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Frederick Vaiana
Voyles Vaiana Lukemeyer Baldwin & Webb
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

F. Aaron Negangard
Chief Deputy Attorney General
Indianapolis, Indiana

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony Steele, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 14, 2020 <br><br> Court of Appeals Case No. <br> 19A-CR-1930 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Sheila A. Carlisle, Judge <br><br> Trial Court Cause No. <br> 49G03-1806-MR-18039 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Anthony Steele (Steele), appeals his conviction for murder, a felony, Ind. Code § 35-42-1-1(1).

We affirm.

# ISSUE

Steele presents this court with one issue on appeal, which we restate as: Whether the State presented sufficient evidence beyond a reasonable doubt to negate Steele's claim of self-defense.

# FACTS AND PROCEDURAL HISTORY

On May 28, 2018, Steele, accompanied by Anthony Brown (Brown), met Elijah Lacey (Lacey) in the Crown Liquors parking lot, located at 21st and Post Road in Indianapolis, Indiana. Steele had contacted Lacey to purchase marijuana from him. Sharon Endsley (Endsley) was seated in her own car in the parking lot, approximately two parking spaces away from Lacey's vehicle.

When Steele and Brown arrived, Lacey was sitting in the driver's seat of the vehicle. As Steele and Brown walked up to Lacey's vehicle, the three "started fussing with each other. [] [Y]ou could tell it was going to be an argument coming on." (Tr. Vol. II, p. 173). Endsley noticed that Brown entered Lacey's vehicle on the passenger side and "[h]e immediately started hitting the person that was sitting in the driver's seat." (Tr. Vol. II, p. 176). She saw Steele hit Lacey through the open window on the driver's side. Both Steele and Brown

"were hitting [] with their hands open. But the person that was sitting in the truck had his fists balled up and was fighting back." (Tr. Vol. II, p. 176). "[A]ll of a sudden," Endsley saw Steele holding "a long silver gun" while he was hitting Lacey. (Tr. Vol. II, p. 176). Endsley observed Steele running to the back of the truck and standing there. After about two or three seconds, Endsley heard a gunshot and noticed that Steele ran back to the driver's side of the truck and shot "maybe two times." (Tr. Vol. II, p. 177). During the fight, Lacey drew his own gun and shot Brown in the leg. After the shots were fired, Steele and Brown ran towards a vacant Marsh building behind Crown Liquors. Endsley identified Steele as the shooter in a photo array.

[6] Renae Vanduyn (Vanduyn) was in the parking lot of the Home Depot, adjacent to the Crown Liquors' parking lot, at the time of the incident. Vanduyn was placing her purchases in the trunk of her car when she heard some loud noises, "like [] gunshots." (Tr. Vol. II, p. 167). She got into her vehicle when she noticed Steele running away very quickly from the Crown Liquors parking lot. Shortly thereafter, she saw Brown run past.

[7] At 4:40 p.m. that afternoon, police officers were dispatched to the parking lot of the Crown Liquors. Upon arrival, they found Lacey, already deceased, in the driver's seat of his vehicle, with his seatbelt still fastened and having been shot in the head. Indianapolis Metropolitan Homicide Detective Erika Jones (Detective Jones) observed fired cartridge casings and shell casings on the ground outside Lacey's vehicle. She also noticed two bags of marijuana and two firearms in the vehicle. Detective Jones recovered surveillance videos from

Crown Liquors, Home Depot, and Waffle House. The video footage confirmed that Steele was involved in an altercation with Lacey and fired shots at him.

[8] The chief forensic pathologist with the Marion County Coroner's Office determined the cause of Lacey's death to be multiple gunshot wounds, with the manner of death as homicide. The pathologist found blunt force trauma injuries on Lacey's face, chest, forearm, lower leg, and ankle. He located a gunshot wound on Lacey's neck that went through the spinal cord and another gunshot wound that entered at the back of the head and exited just below Lacey's eye. The pathologist concluded that either of these gunshot wounds could have been fatal.

[9] On June 5, 2018, the State filed an Information, charging Steele with Count I, murder, a felony, alleging that Steele knowingly or intentionally killed Lacey. Three months later, on September 5, 2018, the State amended the Information by adding Count II, murder, a felony, alleging that Steele knowingly or intentionally killed Lacey while committing or attempting to commit robbery. On June 24, 2019, the trial court conducted a jury trial. At the conclusion of the evidence, the jury returned a guilty verdict on Count I, but found Steele not guilty of Count II. On July 19, 2019, during a sentencing hearing, the trial court sentenced Steele to a term of fifty-five years, with fifty-two years executed and three years probation.

[10] Steele now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

[11] Steele challenges the sufficiency of the evidence, contending the State failed to rebut his claim of self-defense. A valid claim of defense of oneself or another person is a legal justification for an otherwise criminal act. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000). To prevail on such a claim, the defendant must show that he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002). When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. *Id.* If a defendant is convicted despite his claim of self-defense, like here, this court will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. *Id.* at 800-01. In any event, a mutual combatant, whether or not the initial aggressor, must declare an armistice before he or she may claim self-defense. *See* I.C. § 35-41-3-2(g)(3) ("[A] person is not justified in using force if: . . . the person has entered into combat with another person or is the initial aggressor, unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action."). The standard of review to challenge the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Wilson*, 770 N.E.2d at 801. We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* If there is sufficient evidence of probative

value to support the conclusion of the trier of fact, then the verdict will not be disturbed. *Id*.

[12] Challenging the State's negation of his self-defense claim, Steele contends on appeal that "[t]he evidence presented and conceded by both the State's witnesses and its prosecutors was Lacey fired the first shots. He was the aggressor. He was incapable of firing any shots after being shot himself." (Appellant's Br. p. 14). In support of this statement, Steele relies on his own testimony at trial. In this testimony, Steele recounts that after Brown and he walked up to Lacey's vehicle, Lacey "pulled a gun out." (Tr. Vol. III, p. 134). In response to Lacey's action, Steele admitted to pulling his own gun out. Meanwhile, Brown was trying to "slide [Lacey's] gun down." (Tr. Vol. III, p. 135). Steele told Lacey to drop his gun and claims that he ran to the back of the truck because he was scared that Lacey was not dropping his gun. However, upon hearing gunshots coming from the truck, Steele testified that he ran back to the front of the truck and fired his weapon.

[13] To counter Steele's argument, the State points to the evidence it presented during the trial to negate Steele's claim of self-defense and which was accepted by the jury. Endsley, who was parked in close proximity to Lacey's vehicle, saw the initial altercation commence between Steele, Brown, and Lacey. She testified that she witnessed Steele and Brown approach Lacey's truck. Brown immediately entered the vehicle on the passenger side, while Steele walked up to the driver's side. As soon as Brown entered the vehicle, he started hitting Lacey. Endsley noticed that Steele, who was still standing outside the driver's

side door, leaned into the vehicle through the open window and also hit Lacey repeatedly. Endsley's testimony is confirmed by the coroner's report, which discovered evidence of blunt force trauma injuries on Lacey's face, chest, and forearm. By commencing the altercation and hitting Lacey, Steele was the initial attacker—or at the very least, willingly participated in the attack on Lacey which led to his death.

[14] In addition to instigating the fight with Lacey, Steele was a mutual combatant and did not disengage. *See* I.C. § 35-41-3-2(e)(3). The evidence reflects that while Steele was holding his gun and standing at the driver's side door of Lacey's vehicle, another vehicle drove past. Instead of signaling for help, Lacey leaned into the truck and hid his gun from sight. Likewise, even before the first shot was fired, Steele left his position at the driver's side window and ran to the back of the truck. However, instead of disengaging from the attack and finding help, Steele returned to the driver's side window and shot Lacey in the head.

[15] At trial, the jury was presented with two versions of the same incident: Endsley's and Steele's. After hearing their respective testimonies and evaluating their demeanor during direct and cross-examination, the jury clearly believed Endsley, rejected Steele's self-defense claim, and found Steele guilty of murdering Lacey. As we are not allowed to judge the credibility of the witnesses, and there is sufficient evidence of probative value to support the conclusion of the trier of fact that Steele was the initial aggressor and did not withdraw from the fight, we affirm the verdict. *See Wilson*, 770 N.E.2d at 801.

# CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence beyond a reasonable doubt to negate Steele's claim of self-defense.

Affirmed.

Baker, J. and Brown, J. concur